**Daniel Snyder, OSB No. 783856**
dansnyder@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249

Of Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| NAIN MUNOZ, | Case No.  21-690 |
| Plaintiff, | **COMPLAINT** |
| | UNLAWFUL EMPLOYMENT ACTION |
| v. | Title VII Discrimination, Retaliation and supplemental state law claims |
| GREATER ALBANY SCHOOL DISTRICT NUMBER 8J | **JURY TRIAL DEMANDED** |
| Defendant. | |

### I. PRELIMINARY STATEMENT

1.      Plaintiff brings this action to remedy violations of Plaintiff's statutory rights

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*; as well as

supplementary state claims. Plaintiff seeks equitable relief as well as attorneys' fees and costs.

PAGE 1 – COMPLAINT AND DEMAND FOR JURY TRIAL

## II. **JURISDICTION**

2.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. §1343, civil rights jurisdiction.

3.      Plaintiff requests this Court invoke its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to all causes of action based on Oregon statutory provisions or common law as the state claims arise from the same nucleus of operative facts as the federal claims.

4.      All preconditions to jurisdiction pursuant to 42 U.S.C. § 2000e-5 have been satisfied.

a.      On April 16, 2020, Plaintiff filed a charge of employment discrimination and retaliation with the Oregon Bureau of Labor and Industries (BOLI), case number EEEMRC200416-40738, for violation of Oregon law regarding race and national origin discrimination.

b.      BOLI co-filed said charge or complaint with the Equal Employment Opportunity Commission (EEOC). Acknowledgment of the filing was delayed by the EEOC, likely due to the COVID pandemic.

c.      On or about July 28, 2020, the EEOC issued a charge of discrimination, charge number 38D-2020-00659 under Title VII of the Civil Rights Act of 1964 to be processed by BOLI.

d.      On February 16, 2021, BOLI issued Plaintiff a right to sue letter for case number # EEEMRC200416-40738.

e.      On March 24, 2021, the EEOC issued Plaintiff a right to sue letter for charge number 38D-2020-00659.

PAGE 2 – COMPLAINT AND DEMAND FOR JURY TRIAL

f.      On or about September 3, 2020, Plaintiff filed a second charge of

employment discrimination and retaliation with the Oregon Bureau of Labor and

Industries (BOLI), case EEEMNO200903-41111.

g.      BOLI co-filed said second charge or complaint with the Equal

Employment Opportunity Commission (EEOC). Acknowledgment of the filing was

delayed by the EEOC, likely due to the COVID pandemic.

h.      The EEOC issued a charge of discrimination, charge number 38D-2021-

00045C under Title VII of the Civil Rights Act of 1964 to be processed by BOLI.

i.      On February 8, 2021, BOLI issued Plaintiff a right to sue letter for case

number EEEMNO200903-41111.

j.      On March 18, 2021, the EEOC issued Plaintiff a right to sue letter for

charge number 38D-2021-00045C.

5.      Venue is in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the

claim arose in this Judicial District.

6.      Plaintiff 's pendent State law claims are timely filed.

a.      On March 19, 2020, Plaintiff through his attorney, mailed and emailed a

tort claim notice to Defendant addressed to Defendant's attorney, Rebekah R Jacobson,

Garrett Hemann Robertson PC, 1011 Commercial St NE, Salem, Oregon 97301, pursuant

to her request. Rebekah Jacobson acknowledged receipt of the tort claim notice.

b.      Effective June 30, 2020, House Bill 4212 extends the statute of limitations

for claims that have expired or will expire during the state of emergency declared by

Oregon's Governor Kate Brown in response to the COVID-19 pandemic. The period of

the state of emergency began on March 8, 2020, and has recently been extended.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

c.    On August 28, 2020, Plaintiff through his attorney, mailed and emailed a supplemental tort claim notice to Defendant addressed to Defendant's attorney, Rebekah R Jacobson, Garrett Hemann Robertson PC, 1011 Commercial St NE, Salem, Oregon 97301 pursuant to her request. Rebekah Jacobson acknowledged receipt of the tort claim notice.

d.    On January 19, 2021, Plaintiff through his attorney, mailed and emailed a supplemental tort claim notice to Defendant addressed to Defendant's attorney, Rebekah R Jacobson, Garrett Hemann Robertson PC, 1011 Commercial St NE, Salem, Oregon 97301 pursuant to her request. Rebekah Jacobson acknowledged receipt of the tort claim notice.

### III. <u>PARTIES</u>

7.    Plaintiff, Nain "Nate" Munoz (Plaintiff), is a citizen of the United States. At all times material, Plaintiff worked for defendant in Multnomah County, Oregon.

8.    Defendant Greater Albany School District No. 8J (Defendant) has its administrative offices at 336 9th Avenue, SW Albany, Oregon 97231. Defendant operates several public schools including South Albany High School, West Albany High School, and Albany Options High School. Defendant's district covers both Linn and Benton counties in Oregon.

9.    At all times relevant, Defendant's employees, supervisors, administrators, and attorneys, as their conduct is alleged herein, were acting within the course and scope of their employment with the defendant.

### IV. <u>GENERAL FACTUAL ALLEGATIONS</u>

PAGE 4 – COMPLAINT AND DEMAND FOR JURY TRIAL

10.     Plaintiff is of Mexican American descent. Plaintiff's race has been recognized as Mexican, Hispanic, Latin, or Latinex. Plaintiff was discriminated and retaliated against by Defendant based on his race, national origin, and for engaging in whistleblowing.

11.     Plaintiff has earned two master's degrees in education. At all times material, Plaintiff was and is also Oregon licensed school administrator, licensed under the auspices of an agency of the State of Oregon, the Teachers Standards Practices and Training Commission (TSPTC).

12.     At all times material, Plaintiff was an employee of Defendant Greater Albany Public School District Number 8j. Plaintiff was employed as a school administrator. At all times material, Plaintiff was the Head Principal of South Albany High School (South Albany).

13.     On July 1, 2016, Plaintiff became employed by Defendant. On July 1, 2018, Defendant promoted Plaintiff to the position of interim head principal at South Albany High School. Although Plaintiff was the interim head principal, Defendant required Plaintiff to formally interview for the position. On February 1, 2019, Defendant formally hired Plaintiff as head principal of South Albany High School.

14.     On October 14, 2019, Plaintiff sent an email to Lisa Harlan ("Harlan"), the Assistant Superintendent for Defendant Greater Albany Public School District Number 8j, and to "Jeff" Brew ("Brew"), Defendant's Director of Secondary Education. Plaintiff informed Harlan and Brew that South Albany Assistant Principal, "RS," was taking family medical leave (FMLA/OFLA) as of November 22, 2019. RS regular job is to oversee the Special Education Department (SPED) at South Albany High School. Plaintiff requested that Harlan and Brew provide the school and him with administrative support in special education while RS was on leave.

PAGE 5 – COMPLAINT AND DEMAND FOR JURY TRIAL

15.     On October 21, 2019, Harlan and Brew met with Plaintiff. Plaintiff attended the meeting with the good faith belief that the purpose of the meeting was to discuss ideas for providing support for the school and Plaintiff during RS's medical leave. Harlan's solution was to direct Plaintiff to search for a retired administrator to cover RS's absence. Mr. Brew agreed to provide the names of retired administrators for Plaintiff to contact. Despite follow-up requests, Mr. Brew unreasonably delayed sending the list of retired administrators to Plaintiff.

16.     On November 4, 2019, another South Albany High School SPED employee, Special Education Secretary "JR," began eleven days of unexpected medical leave. JR was responsible for setting up Individual Education Plans (IEP) for students as well as manifestation meetings for case managers. JR's absence created an even greater need for special education support at South Albany High School.

17.     On November 6, 2019, Case Manager "DS", a third SPED employee at South Albany, began a five-day medical leave. Because three employees from the Special Education Department were going to be on medical leave at the same time, Plaintiff realized that the Special Education Department at South Albany High School was becoming desperately more understaffed.

18.     On November 7, 2019, a male student that Case Manager DS was responsible for, engaged in disruptive and violent behavior causing damage to a classroom. The student threatened Plaintiff, physically and verbally, using racial slurs of "spic" and a "wet back" when referring to Plaintiff. As the student was holding a metal chain and lock, the student said he hoped "Mr. Munoz would walk into the room so he could kick his ass." For the safety of students and staff, Plaintiff and other school employees required staff and students to leave both the disruptive student's classroom and the surrounding classrooms during this student's tirade.

PAGE 6 – COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff then engaged in whistleblowing concerning the male student. Plaintiff reported a crime to the Albany Police Department by the male student.

19.    On November 12, 2019, Plaintiff finally received an email from Secondary Director Brew providing the list of retired administrators for Plaintiff to contact. This was twenty-two days after Plaintiff's initial meeting with Ms. Harlan and Mr. Brew in which he requested support for South Albany High School and Plaintiff during Assistant Principal RS's absence.

20.    Within a week of receiving Mr. Brew's email, Plaintiff had contacted every retired administrator on Brew's list. Each administrator, one-by-one, declined to take the position. Plaintiff informed Ms. Harlan and Mr. Brew that he was unable to obtain a commitment from retired administrators to cover Assistant Principal RS's absence. Plaintiff explained that he was not experienced and trained in Special Education. Plaintiff asked for their alternative suggestions.

21.    On November 12, 2019, Case Manager DS returned from leave. On November 13, 2019, Plaintiff asked Case Manager DS to schedule a meeting with the student involved in the November 7, 2019 incident and the student's mother.

22.    On November 14, 2019, Plaintiff sent an email to Case Manager DS reminding him to schedule the meeting with the student and the student's mother. On November 14, 2019, Plaintiff received an email from District Support Specialist JE. The email from JE included her offer to mentor Plaintiff in coaching Case Manager DS.

23.    On November 15, 2019, at 9:00 a.m., Plaintiff had a Level 1 STAT (Student Threat Assessment Tool) meeting with School Police Officer KF and Behavior Specialist SK to discuss the disruptive male student in advance of a "Step-Up" meeting that day with the student

PAGE 7 – COMPLAINT AND DEMAND FOR JURY TRIAL

and his mother. During that meeting they agreed to a course of action, to schedule a second meeting, a Level 2 STAT meeting, for November 18, 2019, to create a plan to provide services for the male student involved in the November 7, 2019 incident.

24.    On November 15, 2019, at 10:30 a.m., Plaintiff attended the Step-Up meeting with the student, the student's mother, Case Manager DS, Assistant Special Education Director SS, and School Support Specialist JE. During the meeting, a Step-Up plan was agreed that the male student would return to classes the following Monday, November 18, 2019 and for a follow up meeting.

25.    On November 18, 2019, the male student returned to South Albany High School on the approved Step-Up plan. Within an hour of his arrival on campus, additional disruptive behavior issues arose. The student was closely supported by SPED staff for more than an hour and a half. As the male student became increasingly volatile, Dean of Students Chad Angel gave the student the following options: 1) return to class; 2) call his mother to pick him up; 3) wait in Room 603 until the end of the school day; or 4) leave campus. The student chose to leave campus. In response, Dean of Students Angel and School Police Officer KF followed the student off the premises. When the student got to the school's new gates, he slammed the gates three times thereby creating more than a thousand dollars' worth of damage.

26.    On November 18, 2019, Plaintiff received an email from DS. In that meeting, DS wrote that a manifestation meeting for the student was necessary. Plaintiff told DS that Plaintiff would reply to him after receiving feedback from Student Support Specialist JE regarding the proper procedures to follow. After receiving feedback from JE, Plaintiff sent an email to DS a few minutes later, asking DS to contact the student and his mother and to notify the student and his mother that the student was suspended pending a manifestation meeting.

PAGE 8 – COMPLAINT AND DEMAND FOR JURY TRIAL

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

27.    On November 19, 2019 at 3:00 p.m., West Albany High School Principal Susie Orsborn, Assistant Superintendent Harlan, Director of Secondary Education Brew, Data Director Jon Dilbone, and Plaintiff met to discuss proposals for the use of Measure 98 funds. Assistant Superintendent Harlan told West Albany Principal Orsborn and Mr. Plaintiff that the District might take some of the money to create a ninth and tenth grade behavior school for the District. Plaintiff was disappointed to learn that this would leave fewer funds for South Albany High School. The group and Plaintiff were given a few weeks to create proposals. A meeting to discuss the proposals was to occur in late December 2019.

28.    On November 21, 2019, Plaintiff sent another email to Assistant Superintendent Lisa Harlan inquiring about obtaining support during Assistant Principal RS's leave. Plaintiff wrote that he had a plan and wanted to review it with Ms. Harlan again. Plaintiff was very concerned that South Albany High School was not prepared for RS's leave. That same day, Plaintiff received an email from Ms. Harlan in which she wrote that she was working on potential solutions.

29.    On November 21, 2019, Plaintiff sent a second email to Case Manager DS. In that email he again wrote that he wanted DS to set up a manifestation meeting with the disruptive student and his mother.

30.    On November 22, 2019, Assistant Principal RS began family medical leave. It was not clear when RS would return. Defendant did not have adequate administrative support in place for the Special Education Program at South Albany High School during RS's absence.

31.    On November 25, 2019, around 4:00 p.m., Plaintiff received an email from Defendant's administrative office. In the email, Defendant wrote that South Albany High School

PAGE 9 – COMPLAINT AND DEMAND FOR JURY TRIAL

would be closed for the remainder of the week due to a Norovirus, a very contagious virus that causes vomiting and diarrhea.

32.     On December 4, 2019, Plaintiff spoke to Director of Secondary Education Brew about the November 7, 2019 incident concerning the disruptive student. Plaintiff asked Brew whether the student's behavior warranted expulsion. Brew instructed Plaintiff to speak with Special Education Director Ryan Mattingly to discuss tutoring for the student. Brew also said that Brew would follow up with Plaintiff later regarding the possible expulsion of the student. On December 4, 2019, at 5:35 p.m. following Brew's instructions, Plaintiff asked counselor AH to begin the process of arranging for tutors for the student.

33.     On December 5, 2019, Special Education Director Ryan Mattingly sent Plaintiff an email to set up a meeting to discuss process and systems. The meeting was scheduled for December 6, 2019. On December 5, 2019, Plaintiff asked Special Education Secretary JR to call the disruptive student's mother and set up the manifestation meeting. After multiple attempts to do so, JR let Plaintiff know that she had been unable to get in contact with the student and his mother to schedule the meeting.

34.     On December 6, 2019, at 7:30 a.m., Plaintiff met with Special Education Director Mattingly and Assistant Special Education Director Scott Smith to discuss process and systems. During that meeting, Plaintiff explained his lack of Special Education knowledge and that he needed support in the Special Education program while Assistant Principal RS remained on leave. Around 8:00 a.m., Assistant Superintendent Harlan and Director of Secondary Education Brew walked into that meeting without prior notice. Until that moment, Plaintiff was unaware that either Ms. Harlan or Mr. Brew would be participating in the meeting. During the meeting, Plaintiff explained that the series of critical situations at South Albany High School during the

PAGE 10 – COMPLAINT AND DEMAND FOR JURY TRIAL

previous two months had required much of his attention. Plaintiff said he was finding it difficult to effectively communicate with Case Manager DS. Rather than offering solutions, Ms. Harlan sharply interjected that because Plaintiff is the Principal of South Albany High School, Plaintiff was now responsible for of all Special Education students on Individual Education Plans and for their on-campus behavior whether or not an administrator was available to take RS' place while he was on medical leave. Plaintiff told Ms. Harlan that it would be difficult for him to take on that additional responsibility considering that there was still no one fulfilling the role that RS had while he was on leave, Plaintiff's current role, workload, and lack of training in special education procedures. Special Education Director Mattingly agreed with Plaintiff. Mr. Mattingly told Ms. Harlan that placing these additional responsibilities on Plaintiff was not a good plan given Plaintiff's lack of knowledge and experience in Special Education and how heavy Plaintiff's workload was already as the head principal of South Albany High School. Mr. Mattingly then asked Ms. Harlan if she could propose a different plan. Ms. Harlan flippantly responded, saying "Nate needs to learn this and take it all."

35.    On December 6, 2019, Plaintiff received an email from Director of Secondary Education Brew providing Plaintiff with directives. A directive was that Plaintiff could only seek counsel from Assistant Director Scott Smith when suspending a special education student. This directive removed all support from Plaintiff's other three administrators at the high school when it came to suspending special education students.

36.    On December 10, 2019, less than two weeks before Winter break was to start, a fire occurred in the evening at the new auxiliary gym at South Albany High School. The smoke and fire impacted both the main and auxiliary gyms and added additional responsibilities to Plaintiff.

PAGE 11 – COMPLAINT AND DEMAND FOR JURY TRIAL

37.    On December 13, 2019, at 11:00 a.m., West Albany High School Principal Susie Orsborn, Assistant Superintendent Lisa Harlan, Director of Secondary Education Brew and Plaintiff met to present proposals for the use of Measure 98 funds. Both Plaintiff and Ms. Orsborn submitted proposals for use of the funds. Ms. Orsborn received praise for her proposal from both Ms. Harlan and Mr. Brew. Mr. Brew told Plaintiff that he still might need to divert the funds Plaintiff was requesting to create the behavior school. Plaintiff requested, and was given, the opportunity to amend his proposal.

38.    On December 15, 2019, Plaintiff sent an email with a revised Measure 98 proposal to Assistant Superintendent Harlan, Superintendent Melissa Goff, Director of Secondary Education Brew, and Director of Data Jon Dilbone. That same day, Plaintiff sent a separate email to both Ms. Harlan and Mr. Brew asking them to meet with Plaintiff on December 17, 2019, on a different topic that Plaintiff needed support with.

39.    On December 16, 2019, Plaintiff received an email reply to his revised Measure 98 proposal from Assistant Superintendent Harlan. In that email, Ms. Harlan questioned why Plaintiff was not proposing that the Measure 98 funds be used for her proposed behavior program. Plaintiff responded that he was not opposed to using the funds for a behavior program if doing so was necessary to meet Defendant's needs. Plaintiff again requested a meeting with Ms. Harlan and Mr. Brew for the next day, December 17, 2019. Assistant Superintendent Harlan then sent another email to Plaintiff again asking Plaintiff why he was opposed to using Measure 98 funds for a behavior program. Plaintiff responded to Ms. Harlan and re-emphasized that Plaintiff was not opposed to use of the funds for the behavior program. Plaintiff suggested that Harlan and Plaintiff discuss the matter further at the meeting scheduled for the next day. The Assistant Superintendent's last email to Plaintiff was sent at 1:11 p.m.

PAGE 12 – COMPLAINT AND DEMAND FOR JURY TRIAL

40.     On December 16, 2019, at approximately 1:39 p.m., approximately twenty-eight minutes after Ms. Harlan's last email, Ms. Harlan contacted Plaintiff and wrote that Plaintiff was to attend a formal meeting the following day at 11:00 a.m. Ms. Harlan advised Plaintiff to bring another District employee, Ken Gilbert, Memorial Middle School Principal. Multiple emails followed. Ms. Harlan's reasons for the formal meeting on December 17, 2019, were unclear and shifted as she sent emails to Plaintiff.

41.     On December 17, 2019, at 11:00 a.m., Plaintiff arrived at the formal meeting accompanied by his colleague, Ken Gilbert. Immediately, Assistant Superintendent Harlan began posing questions to Plaintiff that were in the nature of attacks; her tone was hostile, and most questions contained assertions which mischaracterized Plaintiff's words, actions and intentions. After approximately fifteen minutes of enduring Harlan's hostile attacks, Plaintiff asked that Ms. Harlan stop the meeting because of Ms. Harlan's mischaracterizations and unprofessional tone. Plaintiff told Ms. Harland that she had reached the point that Plaintiff felt that Ms. Harlan was not only mischaracterizing him but was discriminating against Plaintiff.

42.     On December 17, 2019, at 2:20 p.m., a few hours after Plaintiff stopped the meeting, Plaintiff received an email from Assistant Superintendent Harlan. In that email, Ms. Harlan wrote that a second meeting was scheduled between Plaintiff and her for December 19, 2019. In that email, Ms. Harlan also wrote that Plaintiff needed to answer her questions and if Plaintiff failed to do so, then Plaintiff's actions would amount to insubordination.

43.     On December 19, 2019, at 11:00 a.m., Plaintiff attended a second formal meeting with Assistant Superintendent Harlan, Human Resource Director Randy Lary, and Plaintiff's colleague, Ken Gilbert. Ms. Harlan asked Plaintiff a new set of questions which were unrelated to the stated purpose for this formal meeting. Lisa Harlan repeatedly and inexplicably said, "we

PAGE 13 – COMPLAINT AND DEMAND FOR JURY TRIAL

don't just hire our buddies." Because Ms. Harlan's assertion about hiring buddies lacked context, Plaintiff did not know what Ms. Harlan was talking about. During this meeting, Ken Gilbert told Ms. Harlan that he, and Memorial Middle School, were also not issuing suspension letters to disruptive students. Mr. Gilbert also added that he believed many schools were not issuing suspension letters, and that a reminder email to all of them would be helpful. At the conclusion of the meeting, Plaintiff asked Ms. Harlan if she had completed her investigation into the November 7, 2019, disruptive student incident. Ms. Harlan stated that she had completed her investigation, but refused to state her findings. Ms. Harlan said she would provide her findings and conclusions to Plaintiff by the following day.

44.     On December 20, 2019, Plaintiff received an email from Ms. Harlan telling Plaintiff that his first measure 98 proposal was not approved. Ms. Harlan directed Plaintiff on how to use the dollars and to resubmit a new measure 98 plan, which he had already done. West Albany Principal, Susie Orsborn, told Plaintiff that her proposal had been approved without restrictions.

45.     On January 6, 2020, Plaintiff received an email from Lisa Harlan notifying Plaintiff that he was to attend a third formal meeting on January 8, 2020. Ms. Harlan wrote that she would present her findings, conclusions and follow-up steps at that formal meeting.

46.     On January 8, 2020, there was a substantial change in the terms and conditions of Plaintiff's employment. Defendant imposed discipline on Plaintiff. At 1:30 p.m. that day, Plaintiff met with Assistant Superintendent Harlan and Human Resource Director Lary. Plaintiff's colleague, Ken Gilbert, also attended the meeting. Ms. Harlan presented the results of her investigation and then handed Plaintiff written discipline, a letter of reprimand. Before Plaintiff could read and respond to the letter, Ms. Harlan then ended the meeting. The meeting

PAGE 14 – COMPLAINT AND DEMAND FOR JURY TRIAL

ended within five minutes after it began. Ms. Harlan told Plaintiff that he had until Monday,

January 13, 2020, to provide a verbal or written response to the letter of reprimand.

47.    After the January 8, 2020 meeting, Plaintiff asked Ken Gilbert why they were

giving him extra days to read the letter of reprimand. Mr. Gilbert responded with, "they want you

to resign." Mr. Gilbert mentioned that he had been in other meetings like this in the past with

Human Resources, and that the district wanted Plaintiff to resign to not have a letter of

reprimand in his file.

48.    It was not until after the January 8, 2020 meeting that Plaintiff had the

opportunity to read the letter. In the letter of reprimand, Defendant claimed it was imposing

discipline on Plaintiff for not providing suspension letters to families and for and not directly

contacting Assistant Special Education Director Scott Smith when suspending Special Education

students. Plaintiff had previously told Ms. Harlan that Plaintiff was unaware that Plaintiff was

required to send suspension letters and had never been trained or told by the District to do so.

49.    On January 9, 2020, Plaintiff sent an email to Ken Gilbert asking Mr. Gilbert if he

could assist Plaintiff in requesting an extension to provide his response to Ms. Harlan. Mr.

Gilbert later texted Plaintiff stating that Human Resources Director Lary was giving Plaintiff an

extension, but that Ms. Harlan wanted to finish the meeting by the end of the week.

50.    On January 10, 2020, Plaintiff personally sent an email to both Mr. Lary and Ms.

Harlan asking for an extension to submit Plaintiff's written response to the proposed letter of

discipline. Neither Mr. Lary nor Ms. Harlan responded.

51.    On January 12, 2020, Plaintiff sent an email to Human Resources Director Randy

Lary requesting an extension to respond to the letter of reprimand. Plaintiff shared a screenshot

of Mr. Gilbert's text from January 9, 2020.

PAGE 15 – COMPLAINT AND DEMAND FOR JURY TRIAL

52.     On January 16, 2020, Plaintiff met with Mr. Lary and Ms. Harlan. During that
meeting, Plaintiff also discussed that Plaintiff was not familiar with the Special Education
procedures and that the caseworker had not provided Plaintiff with instructions to send letters,
nor did Plaintiff have support for RS during that time frame. Plaintiff reminded Ms. Harlan that
during the time she had expected him to contact Assistant Special Education Director Smith for
instructions on suspending special education students, which he did, that Plaintiff's attention in
December included responding to the disruption caused by the school fire.

53.     On January 16, 2020, Plaintiff attended another meeting, a secondary principals'
meeting, that was held after school. In that meeting and on the meeting agenda, Mr. Brew trained
administrators about suspension letters and what they should contain.

54.     On January 16, 2020, Plaintiff reported race discrimination by Defendant against
him in writing. After the January 16, 2020 meeting, Plaintiff sent by email a letter to
Superintendent Melissa Goff which he copied to Assistant Superintendent, Harlan and to the
Human Resources Director. Plaintiff reported race discrimination by Ms. Harlan toward him. In
that letter, Plaintiff wrote that Plaintiff felt that Ms. Harlan was discriminating against Plaintiff.
This letter echoed what Plaintiff told Ms. Harlan on December 17, 2019, that she was
discriminating against Plaintiff. Plaintiff also rebutted Harlan's factual claims about him.
Plaintiff notified Superintendent Goff and Harlan that Harlan was holding Plaintiff to a different
and higher standard than Plaintiff's peers.

55.     On January 24, 2020, Plaintiff discussed his race discrimination claim with
Superintendent Goff and was subjected to retaliation for doing so. On January 24, 2020, Plaintiff
attended a meeting with Superintendent Goff and Memorial Middle School Principal Ken
Gilbert. During the meeting, Ms. Goff told Plaintiff that Defendant was investigating Plaintiff's

PAGE 16 – COMPLAINT AND DEMAND FOR JURY TRIAL

report that Harlan was discriminating against him based on race. During that meeting, Superintendent Goff threatened Plaintiff's job. Specifically, Superintendent Goff said that if Plaintiff's claim of racial discrimination was unsubstantiated, she would "non-action" Plaintiff's contract to the school board for the 2020/2021 school year. Mr. Gilbert told Plaintiff that he documented Goff's threat in the meeting minutes.

56.    On January 29, 2020, there was another substantial change in the terms and conditions of Plaintiff's employment. On January 29, 2020, Plaintiff had yet another meeting with Superintendent Goff. During that meeting, Superintendent Goff said that she was going to assign West Albany High School Principal Susie Orsborn to run administration at South Albany High School for all of February 2020. Later that evening, Plaintiff spoke with Ms. Orsborn by phone. They mutually acknowledged that Goff's plan was uncomfortable and concerning.

57.    On January 30, 2020, Plaintiff sent a text message to Superintendent Goff. Plaintiff wrote that he appreciated receiving support from Principal Orsborn, but that Plaintiff was concerned that having Principal Orsborn at South Albany would create issues among his staff. Later that day, Superintendent Goff arrived at the school and told Plaintiff that she expected Plaintiff to make the situation with Ms. Orsborn work.

58.    On January 31, 2020, there was a substantial change in the terms and conditions of Plaintiff's employment. Plaintiff met with Superintendent Goff and Principal Susie Orsborn. During that meeting, Superintendent Goff directed Plaintiff to hold a meeting with all staff at South Albany High School and to give a false explanation as to why Orsborn was at the school. Goff directed Plaintiff to tell all staff that Ms. Orsborn was shadowing Plaintiff and the school systems, and that Plaintiff would later in the school year go and shadow Ms. Orsborn and her school's systems. Plaintiff asked Goff if that was true. Goff said "no, that's just what I want you

PAGE 17 – COMPLAINT AND DEMAND FOR JURY TRIAL

to tell people." Plaintiff told Ms. Goff that he was concerned about not being more straightforward with his staff, and that Ms. Orsborn presence at South Albany High School would create more disruption. Ms. Goff dismissed Plaintiff's concerns and told him to execute the plan.

59.     Defendant threatened Plaintiff with another investigation that could lead to discipline. On February 13, 2020 around 5:00 p.m., Plaintiff attended another meeting with Secondary Education Director Brew and Plaintiff's colleagues in administration. Secondary Education Director Brew directed Plaintiff in front of Plaintiff's colleagues that Plaintiff was to stay after the meeting and meet with Mr. Brew alone. After the general meeting ended, Secondary Education Director Brew met with Plaintiff in Mr. Brew's office. When Plaintiff asked Mr. Brew why he asked him to stay, Mr. Brew replied that they would meet again "tomorrow morning and discuss it." Plaintiff asked Mr. Brew if the meeting the next day was to be a formal meeting. Mr. Brew said that it was not a formal meeting but added that it would be a good idea for Plaintiff to have his colleague, Ken Gilbert, present at the meeting. Plaintiff then asked Mr. Brew why he thought having Mr. Gilbert present would be a good idea. Mr. Brew again said that they would have discussions at the meeting the next day. Plaintiff felt that Mr. Brew was trying to intimidate Plaintiff.

60.     On February 14, 2020, Plaintiff again reported race discrimination. On that day, Plaintiff went to the South Albany administrative offices. Ken Gilbert intercepted Plaintiff in the lobby of the South Albany administrative offices. Plaintiff was surprised to see Mr. Gilbert because due to the lateness of the meeting with Mr. Brew the evening before, Plaintiff had not had time to contact Mr. Gilbert to ask him to attend Plaintiff's meeting with Mr. Brew. Plaintiff asked Mr. Gilbert how he had been notified to come to the meeting. Mr. Gilbert told Plaintiff that

PAGE 18 – COMPLAINT AND DEMAND FOR JURY TRIAL

Human Resource Director Randy Lary asked him to come to the meeting. As soon as Mr. Munoz and Mr. Gilbert arrived to meet with Mr. Brew, Mr. Brew said he had to step out of the office to make a telephone call. A few minutes after leaving the office to make the call, Mr. Brew walked back into the office and told Plaintiff that neither Assistant Principal Orsborn nor Assistant Principal Gina Ayers, who were present, could be in the meeting. After Orsborn and Ayers left, Plaintiff made another report of race discrimination by Defendant to Mr. Brew. Plaintiff told Mr. Brew that Plaintiff felt unsupported by and that its recent actions were punitive and discriminatory.

61.     In March 2020, Plaintiff was subjected to further retaliation. On March 19, 2020, Secondary Director Brew asked Plaintiff to inquire of staff at South Albany High School regarding their plans over spring break. Plaintiff expressed concerns that doing so would interfere with the employee's union contract. Director Brew directed Plaintiff to make the inquiry anyway. Plaintiff did as Brew directed and made the inquiry. One of the South Albany High School staff members complained to both the union and to Defendant about the inquiry. In retaliation for Plaintiff following instructions from Brew, Defendant began an investigation of Plaintiff making the inquiry to staff.

62.     Plaintiff reported harassment to Superintendent Goff. On May 13, 2020, Plaintiff sent an email to Harlan reporting that she only singled out South Albany High School staff about the use of Google Meets. Over the course of the day and eleven emails later, Harlan and Goff berated and harassed Plaintiff. Plaintiff wrote to Superintendent Goff asking if Goff was supporting Harlan's harassing leadership style.

63.     Over the whole course of the 2019/2020 school year, Brew had been assigned by Defendant to evaluate Plaintiff's performance. In April 2020, Goff told Plaintiff that his

PAGE 19 – COMPLAINT AND DEMAND FOR JURY TRIAL

performance would be evaluated by Harlan which was concerning since Plaintiff had previously reported harassment, discrimination, and a hostile work environment by Harlan. Plaintiff asked Goff to reassign Brew back as his evaluator. Goff answered "no." Plaintiff asked Goff to schedule mediation, and asked for mediation with Harlan, which Goff also declined. Plaintiff requested that another district high school principal sit in on virtual meetings with Harlan due to his concerns. Goff declined that request.

64.    On June 17, 2020, there was another substantial change in the terms and conditions of Plaintiff's employment with Defendant. On June 17, 2020, the assistant principals at South Albany High School contacted Plaintiff and reported that they had just had a conversation with Superintendent Melissa Goff, in which she spoke badly about Plaintiff, made negative comments about his leadership at South Albany High School, and made false statements about Plaintiff. Plaintiff sent an email to Superintendent Melissa Goff asking her to not defame Plaintiff when speaking to the team at South Albany High School. Goff did not deny making negative statements about Plaintiff to staff at South Albany High School. Instead, Goff sent an email to Plaintiff in which Goff asserted that she had not lied and had only spoken the truth. Plaintiff asked why Defendant continued to create a hostile work environment and why the district never provided support.

65.    Defendant constructively discharged Plaintiff. June 24, 2020, was Plaintiff's last day of employment with Defendant. To avoid further harassment and discrimination by Defendant, Plaintiff sought employment with another school district. Plaintiff accepted a job as a school administrator with another Oregon school district. This new position was so far from Albany it required Plaintiff to sell his home and move.

PAGE 20 – COMPLAINT AND DEMAND FOR JURY TRIAL

66.     On June 24, 2020, Defendant engaged in further retaliation against Plaintiff. Defendant engaged in bad faith threats to Plaintiff's professional license. On June 28, 2020, Plaintiff received a June 24, 2020 letter from Defendant. This letter was signed by Randy Lary, Defendant's Executive Director of Human Resources. Defendant demanded that Plaintiff answer questions by June 30, 2020, claiming Defendant was conducting another investigation of Plaintiff. Defendant criticized Plaintiff for not enforcing social distancing on June 20, 2020, when some photographs were taken at South Albany High School. Harlan threatened Plaintiff that depending on the findings of that investigation, Defendant may report Plaintiff to the Oregon Teacher Standards and Practices Commission (TSPC).

67.     On June 29, 2020, Plaintiff sent a written response to Lary's letter. Plaintiff also sent Goff and Lary eight photographs that he found on social media from other schools within Defendant's district. Those photographs showed that other school officials, who were Caucasian, also took photographs of students and staff, the same thing Defendant was investigating Plaintiff about, and those school officials were not disciplined.

68.     Defendant promoted John Hunter to the position of Head Principal at South Albany High School. Mr. Hunter is Caucasian. Defendant did not designate John Hunter as interim principal when he was awarded the position.

69.     On August 28, 2020, Plaintiff, through his attorney, sent a supplemental tort claim notice to Rebekah R Jacobson, Garrett Hemann Robertson PC, 1011 Commercial St. NE Salem Oregon, the attorneys and agent for Defendant, reporting further discrimination by Defendant against Plaintiff, including the threat by Defendant to report Plaintiff to the Oregon Teacher Standards and Practices Commission (TSPC).

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

70.     On or before October 13, 2020, Defendant retaliated against Plaintiff.
Superintendent Melissa Sue Goff filed a complaint with the Oregon Teacher Standards and
Practices Commission (TSPC) claiming that Plaintiff violated Defendant's policy and state
mandate regarding COVID-19 health and safety practices. Plaintiff subsequently received an
October 23, 2020 letter from the Oregon TSPC confirming that Defendant had made that
complaint.

## IV. <u>STATEMENT OF CLAIMS</u>

### FIRST CLAIM FOR RELIEF

(Title VII Civil Rights Act of 1964,

Race and National Origin Discrimination – 42 U.S.C. §2000e-2)

71.     Plaintiff re-alleges all prior relevant paragraphs as if fully set forth herein.

72.     At all material times, Defendant was an employer within the meaning of
42 U.S.C. § 2000e (b).

73.     Defendant discriminated against Plaintiff with respect to the terms and conditions
of his employment because of Plaintiff's race as alleged above, including, but not limited to,
disciplining Plaintiff based on race and national origin.

74.     As a result of Defendant's unlawful employment actions, Plaintiff suffered, and
continues to suffer, economic and non-economic damages. Plaintiff is entitled to damages,
attorneys' fees, costs, and interest as alleged below.

### SECOND CLAIM FOR RELIEF

(Race and National Origin Retaliation - 42 U.S.C. § 2000e-3)

75.     Plaintiff re-alleges all prior relevant paragraphs as if fully set forth herein.

PAGE 22 – COMPLAINT AND DEMAND FOR JURY TRIAL

76.     Defendant discriminated and retaliated against Plaintiff with respect to the terms and conditions of his employment because Plaintiff opposed unlawful racial discrimination.

77.     As a result of Defendant's unlawful employment actions, Plaintiff suffered, and continues to suffer, economic and non-economic damages. Plaintiff is entitled to damages, attorneys' fees, costs, and interest as alleged below.

## DAMAGES FOR CLAIMS 1 AND 2

78.     As a result of Defendant's unlawful employment actions, Plaintiff suffered and continues to suffer economic and non-economic damages in an amount to be proved at trial.

79.     Plaintiff is entitled to equitable relief, including, but not limited to, an award of back pay and lost benefits. Plaintiff should be awarded past economic damages in an amount determined fair by a jury to compensate Plaintiff for lost employment opportunities, including but not limited to, promotions, raises, and continued employment. Plaintiff's economic damages are continuing in nature and are not presently known.

80.     Plaintiff is entitled to an award for past lost wages and benefits, future lost earnings, benefits, and lost earning capacity, and other compensatory damages for future pecuniary losses. Plaintiff's economic damages are continuing in nature and are not presently known.

81.     To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

82.     Plaintiff is entitled to post-judgment interest on all damages, costs, and attorneys' fees from the date of judgment until the date paid.

PAGE 23 – COMPLAINT AND DEMAND FOR JURY TRIAL

83.     Pursuant to 42 U.S.C. § 2000e-5, Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred herein.

84.     Plaintiff also seeks an award for such additional relief as justice may require.

## THIRD CLAIM FOR RELIEF

(42 U.S.C. § 1983 – Violation of the Equal Protection Clause)

85.     Plaintiff re-alleges all prior relevant paragraphs as if fully set forth herein.

86.     Defendant violated Plaintiff's rights to equal protection of the law, as guaranteed by the Fourteenth Amendment to the United States Constitution, by treating Plaintiff differently and holding Plaintiff to a disparate and unequal standard because of his race and national origin, as compared to other white and non-Hispanic employees, without rational basis and based upon vindictive action, illegitimate animus, and ill will.

87.     Defendant's conduct constituted a violation of the custom or policy of Defendant.

88.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered lost income and benefits and will continue to suffer lost income and benefits, including pre-judgment interest, all to his economic damages in an amount to be determined at trial.

89.     Plaintiff is entitled to equitable relief, including, but not limited to, an award of back pay and lost benefits. Plaintiff should be awarded past economic damages in an amount determined fair by a jury to compensate Plaintiff for lost employment opportunities, including, but not limited to, promotions, raises, and continued employment. Plaintiff's economic damages are continuing in nature and are not presently known.

90.     Plaintiff is entitled to compensatory damages in an amount to be proved at trial.

91.     Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to an award of attorneys' fees, expert fees and costs incurred herein.

PAGE 24 – COMPLAINT AND DEMAND FOR JURY TRIAL

## FOURTH CLAIM FOR RELIEF

### (Race Discrimination – ORS 659A.030(1)(b))

92.     Plaintiff re-alleges all prior relevant paragraphs as if fully set forth herein.

93.     Defendant is an "employer" within the meaning of ORS 659A.001 (4) and ORS 659A.030.

94.     In violation of ORS 659A.030 (1), Defendant discriminated against Plaintiff with respect to the terms and conditions of her employment because of Plaintiff's race.

95.     As a result of Defendant's unlawful employment actions, Plaintiff suffered, and continues to suffer, economic and non-economic damages. Plaintiff is entitled to damages, attorneys' fees, costs, and interest as alleged below.

## FIFTH CLAIM FOR RELIEF

### (Unlawful Employment Practice – ORS 659A.030(1)(b))

96.     Plaintiff re-alleges all prior relevant paragraphs as if fully set forth herein.

97.     In violation of ORS 659A.030 (1), Defendant discriminated against Plaintiff with respect to the terms and conditions of her employment because of Plaintiff's race and national origin.

98.     As a result of Defendant's unlawful employment actions, Plaintiff suffered, and continues to suffer, economic and non-economic damages. Plaintiff is entitled to damages, attorneys' fees, costs, and interest as alleged below.

## SIXTH CLAIM FOR RELIEF

### (Unlawful Employment Practice - ORS 659A.030(1)(f))

99.     Plaintiff re-alleges all prior relevant paragraphs as if fully set forth herein.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

100.    Defendant is an "employer" within the meaning of ORS 659A.001 (4) and ORS 659A.030.

101.    In violation of ORS 659A.030(1)(f), Defendant discriminated and retaliated against Plaintiff with respect to the terms and conditions of her employment because Plaintiff opposed Defendant's race and national origin discrimination against Plaintiff.

102.    As a result of Defendant's unlawful employment actions, Plaintiff suffered, and continues to suffer, economic and non-economic damages. Plaintiff is entitled to damages, attorneys' fees, costs, and interest as alleged below.

**SEVENTH CLAIM FOR RELIEF**

(ORS 659A.203—Whistleblower Retaliation)

103.    Plaintiff re-alleges all relevant prior paragraphs as if fully set forth herein.

104.    Defendant retaliated against Plaintiff and terminated Plaintiff's employment because Plaintiff reported information that he reasonably believed was a violation of law, rule, or regulation. Defendant's conduct violated ORS 659A.203.

105.    As a result of Defendant's unlawful employment actions, Plaintiff suffered, and continues to suffer, economic and non-economic damages. Plaintiff is entitled to damages, attorneys' fees, costs, and interest as alleged below.

**EIGHTH CLAIM FOR RELIEF**

(ORS 659A.199 – Whistleblower Retaliation)

106.    Plaintiff re-alleges all relevant prior paragraphs as if fully set forth herein.

107.    During his employment with Defendant, Plaintiff made good faith complaints or reports of information that he believed to be violations of law, rules, or regulations.

PAGE 26 – COMPLAINT AND DEMAND FOR JURY TRIAL

108.    In violation of ORS 659A.199, Defendant discriminated against Plaintiff and terminated Plaintiff's employment because of Plaintiff's good faith reports and complaints.

109.    As a result of Defendant's unlawful employment actions, Plaintiff suffered, and continues to suffer, economic and non-economic damages. Plaintiff is entitled to damages, attorneys' fees, costs, and interest as alleged below.

## NINTH CLAIM FOR RELIEF

### (ORS 659A.230 – Whistleblower Retaliation)

110.    Plaintiff re-alleges all relevant prior paragraphs as if fully set forth herein.

111.    During her employment with Defendant, Plaintiff made good faith complaints or reports of criminal activity.

112.    In violation of ORS 659A.230, Defendant discriminated against Plaintiff and terminated Plaintiff's employment because of Plaintiff's good faith reports and complaints.

113.    As a result of Defendant's unlawful employment actions, Plaintiff suffered, and continues to suffer, economic and non-economic damages. Plaintiff is entitled to damages, attorneys' fees, costs, and interest as alleged below.

## DAMAGES FOR CLAIMS 3 THROUGH 9

114.    As a result of Defendant's unlawful employment actions, Plaintiff suffered and continues to suffer economic and non-economic damages.

115.    Plaintiff is entitled to equitable relief, including, but not limited to, an award of back pay and lost benefits. Plaintiff should be awarded past economic damages in an amount determined fair by a jury to compensate Plaintiff for lost employment opportunities, including, but not limited to, promotions and raises. Plaintiff's economic damages are continuing in nature and are not presently known.

PAGE 27 – COMPLAINT AND DEMAND FOR JURY TRIAL

116.    Plaintiff is entitled to compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses in an amount to be proved at trial.

117.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

118.    Pursuant to ORS Chapter 659A and ORS 20.107, Plaintiff is entitled to recover her reasonable attorneys' fees and costs, including expert witness fees.

119.    Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

### TENTH CLAIM FOR RELIEF

(Wrongful Termination)

120.    Plaintiff realleges all relevant paragraphs.

121.    Defendant's conduct, as alleged, was in retaliation for Plaintiff assertion of Plaintiff's state and federally protected rights to work in an environment free from discrimination, harassment, and otherwise hostile work environments, and as such constitutes a wrongful discharge under state common law.

122.    Plaintiff's remedies under state and federal statutory law do not constitute a complete remedy for the damage Defendant has inflicted.

123.    As a result, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

124.    Plaintiff is entitled to equitable relief, including but not limited to, a declaration that Defendant violated Plaintiff's statutory rights, reinstatement, and an injunction prohibiting further discrimination and retaliation.

125.    Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for past and future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury.

126.    Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional distress and other nonpecuniary losses in an amount to be proved at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury.

127.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

128.    Pursuant to ORS 20.107, Plaintiff is entitled to an award of attorneys' fees and expert witness fees.

129.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

**PRAYER FOR RELIEF**

Plaintiff prays for the following judgment against defendant:

1.    A sum which will fully compensate Plaintiff for Plaintiff's non-economic damages in a sum that is just as determined by a jury;

2.    A sum which will fully compensate Plaintiff for Plaintiff's economic damages in a sum that is just as determined by a jury;

PAGE 29 – COMPLAINT AND DEMAND FOR JURY TRIAL

3.    Equitable relief, including but not limited to, reinstatement if Plaintiff so chooses;

4.    Liquidated damages;

5.    Plaintiff's costs and disbursements incurred herein;

6.    Plaintiff's attorney fees; and

7.    For such other and further relief as the Court may deem just and equitable.

**Plaintiff demands a trial by Jury.**

Dated: May 5, 2021

Law Offices of Daniel Snyder

_/s/ Daniel Snyder_
Daniel Snyder, OSB No. 783856
dansnyder@lawofficeofdanielsnyder.com
Carl Post, OSB No. 06105
carlpost@lawofficeofdanielsnyder.com
John David Burgess, OSB 106498
johnburgess@lawofficeofdanielsnyder.com
Tel: (503) 241-3617 / Fax: (503) 241-2249

Of Attorneys for Plaintiff

PAGE 30 – COMPLAINT AND DEMAND FOR JURY TRIAL